IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MILESTONE ELECTRIC, INC., a Texas corporation, <br><br> Plaintiff, <br><br> vs. <br><br> NICE INCONTACT, INC., a Utah corporation, <br><br> Defendant. | ORDER AND MEMORANDUM DECISION <br><br> Case No. 2:20-cv-00630 <br><br> Judge Tena Campbell |

Defendant Nice inContact, Inc., (inContact)[1] moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6). For the reasons set forth below, the court grants inContact's motion in part and denies it in part. The court finds that Plaintiff Milestone Electric, Inc., (Milestone) has failed to allege plausible contract claims but has alleged sufficient fraud claims.

## FACTUAL BACKGROUND[2]

On November 6, 2018, Milestone and inContact entered into a service contract (the Contract) under which inContact supplied phone answering services for Milestone. Almost

---

[1] Defendant notes that Milestone used the incorrect name and state of incorporation when it originally filed the complaint. Defendant is a Delaware corporation, its name is inContact, Inc., and its registered dba is NICE inContact.
[2] Relevant facts are taken from Milestone's complaint. The court takes them as true for the purposes of this order. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008); Blueberry Hill LLC v. Shalom Int'l Corp., No. 2:17-CV-00385-DS, 2017 WL 5508347, at *1 (D. Utah Nov. 15, 2017).

1

immediately, inContact's phone answering system experienced outages. Milestone reported the outages and inContact supposedly repaired the problems. Even so, Milestone sought an amendment to the Contract that would allow it to terminate the Contract for cause if the outages persisted. On May 20, 2019, the parties amended the Contract with the following condition:

> Termination for Cause
> Notwithstanding anything to the contrary herein, [Milestone] may terminate for Cause if [Milestone] receives SLA credits in any two (2) months during a twelve (12) rolling month period of the Service Term by delivering written notice to [inContact] reasonably describing such Cause, with such termination being effective thirty (30) days following delivery of the written notice unless such Cause is cured by [inContact] within the thirty (30) day period.

(Compl. ¶ 11 (ECF No 2).) An SLA credit is compensation on a customer's bill to make up for outage periods.

Before executing the addendum, Milestone asked Steve Pulley, inContact's Corporate Sales Manager, some questions about the Termination for Cause provision. In the complaint Milestone includes a screenshot of the email conversation between Mr. Pulley and Jeff Means, Milestone's Contact Center Operations. Mr. Pulley wrote:

> After meeting with my executives including my CEO we are not able to accept all of your requests. . . . I think there has been some misunderstanding on how term we proposed works [sic]. As I have said before this is a term we have not offered before to any of our customers. I feel it would help both parties to review it and Jeff's question from earlier . . .
>
> Jeff here is your question from an earlier email,
>
> *[F]or the remainder of the contract following October, there shouldn't be any terms to resolve within 30 days. I feel that defeats the purpose of addendum. Maybe I'm misunderstanding and you can explain better. Here's an example of how I understand it: We experience an hour of down time, we notify [inContact] and you resolve within 30 days, meaning we don't have any down time in that period, then we are unable to exit the contract, even if we experience another down time 2 months down the line in the same 12-month period. Please let me know if that is not the case.*

> Jeff here is how our term will work. If you have an outage that that [sic] exceeds our uptime SLA of 99.99% you will be given a SLA credit. This counts toward towards [sic] the Termination for Cause no matter whether we fix it or not. There is no cure that wipes out the outage. If you have two outages that exceed the SLA in a rolling 12 month period you may exit the contract. I hope that clears this up.

(Id. ¶ 12.) Based on Mr. Pulley's representations, Milestone executed the addendum.

Milestone alleges that "In September and October of 2019, Milestone received SLA credits because the downtime exceeded the SLA threshold. Based on this, on November 22, 2019, Milestone submitted written notice to inContact of its intent to terminate the contract." (Id. ¶¶ 14–15.)

Milestone does not state any additional facts regarding inContact's alleged breach, though it includes a screenshot of a letter that it characterizes as inContact's acceptance of Milestones termination for cause. (Id. ¶ 16.) The letter has inContact's letterhead at the top but it is signed by Milestone's representative and is addressed from Milestone to inContact. In the letter, Milestone requests to terminate the Contract for cause based on Milestone's receipt of SLA credits in two months during the last twelve-month period.

Months after the termination became effective, inContact reclassified Milestone's termination as a termination for convenience, rather than for cause, and told Milestone to pay over $180,000 in early termination fees. Milestone refused and subsequently filed this declaratory action. Milestone raises five claims against inContact: declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement/intentional misrepresentation, and negligent misrepresentation.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." Slater v. A.G. Edwards & Sons,

3

Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when the complaint contains factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., 771 F.3d 697, 700 (10th Cir. 2014). The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ANALYSIS

As an initial matter, the parties dispute which state's laws apply to this case. InContact argues that Delaware law applies based on the Contract's choice-of-law provision that was in effect when Milestone terminated the Contract. Milestone disagrees, mentioning in a footnote that when the parties formed the Contract, the terms provided for the application of Utah law.

The court need not analyze the choice-of-law discrepancy because it finds that Milestone has not stated plausible contract claims under the laws of either state. Its fraud claims are plausible under Utah and Delaware law.

### I. Breach of Contract

To state a claim for breach of contract, a plaintiff must allege sufficient facts showing a valid contract, breach of that contract, and damages. Am. W. Bank Members, L.C. v. State, 2014 UT 49, ¶ 15, 342 P.3d 224, 230–31; Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513,

548 (Del. Super. Ct.), aff'd, 886 A.2d 1278 (Del. 2005). At minimum, a breach of contract claim must include allegations of when the contract was entered into by the parties, the essential terms of the contract at issue, and the nature of the defendant's breach. Am. W. Bank Members, 342 P.3d at 231.

Milestone says that inContact "breached its service terms" when it issued SLA credits in September and October of 2019. (Opp'n at 1.) InContact did issue SLA credits, but this fact alone does not constitute a breach. There is no contract provision that prevents inContact from issuing SLA credits, which are simply credits applied to a customer's bill. (Compl. (ECF No. 2) at ¶¶ 8-14.)

Rather, under the terms of the Contract, inContact had the opportunity to cure the failures within thirty days. Milestone's complaint is silent about what happened after Milestone gave written notice on November 22, 2019. It has not alleged that inContact failed to cure the problems, and without this key allegation, Milestone cannot proceed on its breach of contract claim.

## II. Breach of Implied Covenant of Good Faith and Fair Dealing

A claim for breach of the implied covenant of good faith and fair dealing is a derivative of a breach of contract claim. Am. W. Bank Members, 342 P.3d at 230–31; Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 888 (Del. Ch. 2009) ("[t]o state a claim for breach of the implied covenant, [the plaintiff] "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff"). When a party does not allege the existence of facts required to plead a breach of contract, it also fails to plead a breach of the covenant of good faith and fair dealing. Am. W. Bank Members, 342 P.3d at 230–31. Milestone has not alleged sufficient facts to show the nature of inContact's breach of contract

5

and its breach of the implied covenant of good faith and fair dealing claim must also be dismissed.

### III. Fraud Claims

For its fraudulent inducement claim to survive a 12(b)(6) challenge, Milestone must establish nine elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

State v. Apotex Corp., 2012 UT 36, ¶ 58, 282 P.3d 66; see also Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 (Del. 1992).

The elements of a negligent misrepresentation claim "are similar to those of fraud except that negligent misrepresentation 'does not require the intentional mental state necessary to establish fraud.'" Shah v. Intermountain Healthcare, Inc., 2013 UT App 261, ¶ 11, 314 P.3d 1079, 1085 (quoting Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc., 713 P.2d 55, 59 n.2 (Utah 1986)). Instead, the requisite mental state for negligent misrepresentation is that the defendant "carelessly or negligently ma[de] a false representation." Moore v. Smith, 2007 UT App 101, ¶ 36 n.12, 158 P.3d 562, 573; see also Resolve Funding, LLC v. Buckley Prop. Servs., LLC, No. CV S17C-09-003 RFS, 2018 WL 776417, at *4 (Del. Super. Ct. Feb. 7, 2018) (describing the elements of negligent misrepresentation as "(1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information.")

Milestone has sufficiently pled its fraud claims. The parties entered into a business relationship and Mr. Pulley had an obligation to provide accurate information. On its face, Mr. Pulley's email expressly contradicts inContact's current interpretation of the Contract. Mr. Pulley—after admitting that he had spoken with inContact executives about Termination for Cause—told Mr. Means that "there is no cure that wipes out the outage. If you have two outages that exceed the SLA in a rolling 12-month period you may exit the contract." Milestone relied on this statement when it decided to execute the Contract addendum and when it submitted its request to terminate for cause.

Moreover, although Mr. Pulley made clear in the email that there were misunderstandings between the parties about the meaning of Termination for Cause condition, he went on to explain that the Termination for Cause provision means something other than what inContact now says that it means. At the least, this shows that Mr. Pulley was reckless in his representation to Milestone, and the court can reasonably infer that inContact is liable for fraudulent inducement and negligent misrepresentation.

## **ORDER**

Defendant Nice inContact, Inc.'s motion to dismiss (ECF No. 6) is GRANTED in part and DENIED in part. Milestone's fraudulent inducement and negligent misrepresentation claims survive dismissal, but the breach of contract and breach of the implied covenant of good faith and fair dealing contract claims are dismissed under Rule 12(b)(6). Because the court believes Milestone can correct the complaint's defects, the claims are dismissed without prejudice and the court grants Milestone leave to amend.

DATED this 17th day of June, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge